UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:26 MJ 6180 PLC |
| | ) | |
| HETRAJ DODIYA, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR PRETRIAL DETENTION AND HEARING**

COMES NOW the United States of America (the "Government"), by and through Thomas C. Albus, United States Attorney, and Gwendolyn E. Carroll, Assistant United States Attorney, for the Eastern District of Missouri, and hereby moves the Court to order Defendant Jashanpreet Singh ("Defendant") detained pending trial, and requests that a detention hearing be held within three days of Defendant's initial appearance, pursuant to Title 18, United States Code, Section 3142(f)(2). In support of this motion, the Government states as follows:

**INTRODUCTION**

Defendant is charged by complaint with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. Because Defendant fled from law enforcement, failed to surrender himself as scheduled, and is facing both a significant period of incarceration in the event of his conviction and deportation, the case involves a serious risk that Defendant will flee. Further, there is no condition or combination of conditions that will reasonably assure his future appearance and the safety of the community, and Defendant should be detained pending trial.

**LEGAL STANDARD**

Under the Bail Reform Act, a defendant must be detained where—as here—two conditions are met: (1) the case involves a serious risk of a defendant's flight, and (2) no conditions can reasonably assure the defendant's appearance or the safety of the community. *See* 18 U.S.C. § 3142(f)(2)(A) ("The judicial officer shall hold a [detention] hearing . . . in a case that involves - - a serious risk that such person will flee[.]"); 18 U.S.C. § 3142(e)(1) (the "judicial officer shall order the detention of the person . . . [i]f, after a [detention] hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community").

As the Eighth Circuit has made clear, in determining whether these two conditions are met, this Court need not conduct a "rigid two-step inquiry." *United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023). Rather, this Court "permissibly conduct[s] the two inquiries in a single detention hearing," in part, because "the two inquires, while not identical, substantially overlap." *Id.* Indeed, the Eighth Circuit has recognized that "the § 3142(g) factors . . . are relevant both to determining whether [the] Defendant presents a serious risk of flight and [whether] there are conditions of release that will reasonably assure Defendant's appearance." *Id.* (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015)).

**ARGUMENT**

As explained below, there is a serious risk that Defendant will flee if not detained pending trial, and there is no condition or combination of conditions that will reasonably assure his appearance and the safety of the community.

The Defendant is not a United States citizen, and he has entered the United States on a student visa. In light of his arrest in this matter, his deportation is a virtual inevitability, either

upon his release should he be placed on bond or upon his completion of any federal sentence imposed subsequent to his conviction. Defendant faces profound, life-altering consequences as a result of this prosecution and has significant incentives to flee.

The Defendant's conduct in this matter, including his repeated evasion of law enforcement, demonstrates that he is a serious risk of flight. On the morning of September 17, 2026, an FBI surveillance team was conducting surveillance at the residence of the victim from whom the gold was scheduled to be retrieved. Agents observed a black Land Rover with a temp tag on the rear being driven by an Indian male drive passed victim VT's residence, turn around, and pass by again. A few minutes later, the same black Land Rover conducted the same maneuver. Finally, a few minutes after that, the black Land Rover approached the residence and began to park on the sidewalk outside the residence. Two FBI agents approached the vehicle driven by the defendant. An agent wearing an FBI raid jacket clearly announced himself as an FBI agent through the driver's side window to the Indian male. The agent instructed the Indian male driver to place the vehicle in park; however, the Indian male driver instead drove away at an extremely high rate of speed, coming within feet of striking the other FBI agent.

Agents determined that the driver had driven into a subdivision which did not have a road exit. Once additional law enforcement officers arrived, a search for the vehicle was conducted within the neighborhood. The vehicle was found to have been abandoned at the end of a road which led to a wooded area. Following a search of the wooded area, the Indian male was not located.

The abandoned black Land Rover was seized by the FBI. During a safety and inventory search of the abandoned vehicle, paperwork related to a traffic citation and an insurance claim from August 25, 2026 were located bearing the name Hetraj Dodiya. A search of law enforcement databases identified a telephone number connected to Dodiya, and an FBI agent (SA Bruno) called

the telephone number associated with Dodiya. An individual picked up the telephone, and when the FBI agent identified himself, the telephone call was ended by the individual who had answered the phone. SA Bruno then attempted to call and text message the number associated with Dodiya numerous additional times without a response. SA Bruno then received a telephone call from a defense attorney, who indicated that Hetraj Dodiya had contacted him and had given him SA Bruno's telephone number. SA Bruno advised the defense attorney to contact Assistant United States Attorney Gwendolyn Carroll. AUSA Carroll spoke with the defense attorney on September 17, 2026, who said that he had not yet been retained, but that he would arrange for Mr. Dodiya to appear at the FBI the following day, September 18, 2026. The defense attorney contacted AUSA Carroll the morning of September 18, 2026 and informed AUSA Carroll that he had not been retained and that Mr. Dodiya was no longer responding to his telephone calls. On September 18, 2026, agents learned through law enforcement databases that Dodiya had purchased an international flight ticket from Detroit, Michigan, to India. Defendant has repeatedly evaded law enforcement agents – first, by pulling out of the driveway at a high rate of speed, nearly hitting an agent in the process. Second, by abandoning his vehicle, and third, by failing to appear at the FBI as scheduled on September 18, 2026. The defendant poses a serious risk of flight.

Defendant's incentive to flee is heightened by his substantial sentencing exposure in this matter. Gold bar scams like those in which Defendant is presently charged typically have losses well over $3.5 million, losses caused exclusively to elderly and vulnerable victims. Because of the numerous sentencing enhancements that apply in cases in which the victims are vulnerable, the loss is substantial, and a large part of the scheme is conducted overseas, Defendant is likely to face a substantial prison sentence in the event of his conviction. The likelihood of a lengthy prison sentence—combined with Defendant's utter lack of binding ties to this district—demonstrates his

significant motivation to flee. *See United States v. Abad*, 350 F.3d 793, 799 (8th Cir. 2003) ("Abad is not a United States citizen. Abad faces a maximum sentence of 30 years, see 18 U.S.C. § 2423(b), which . . . weighs strongly in favor of a finding Abad would be a flight risk.").

The evidence against the Defendant is overwhelming. *See* 18 U.S.C. § 3142(g)(2). This includes, but is not limited to, the FBI's direct observation of Defendant attempting to defraud an elderly victim.

Defendant's history and characteristics necessitate his detention. *See* 18 U.S.C. § 3142(g)(3). Defendant has significant ties outside of the United States, specifically, in India, the location of the call center at which this scam originates. Defendant is not a citizen and has ample motivation to flee to his country of origin. *See United States v. Maheshwari*, 358 F. App'x 765, 766–67 (8th Cir. 2010) (affirming the district court's detention order where the defendant was "an Indian native present in the United States on a visa" who also traveled internationally and expressed an interest in returning to India or Pakistan).

Further, Defendant poses an ongoing danger to the community. Significantly, Defendant is interacting face-to-face with the victims. He is not sitting in a call center overseas – he is the individual engaging in person with the victim.

In sum, the totality of the relevant factors set forth in Section 3142(g) demonstrate that Defendant presents a serious flight risk and that there is no condition or combination of conditions that will reasonably assure his appearance in the future.

WHEREFORE, the Government requests that the Court hold a detention hearing within three days of Defendant's initial appearance and, following such hearing, order that Defendant be detained pending trial.

Respectfully submitted,

THOMAS C. ALBUS
UNITED STATES ATTORNEY

*Gwendolyn E. Carroll*
Gwendolyn E. Carroll #4657003NY
ASSISTANT UNITED STATES ATTORNEY
Thomas F. Eagleton Courthouse
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200